UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

                                          CASE NO: 8:08-cv-388-T-23EAJ

          Plaintiff,

v.

MORTGAGE FORECLOSURE SOLUTIONS,
INC., DEBRA BEHRENS, and MICHAEL SIANI,

          Defendants.
_____/

## STIPULATED PRELIMINARY INJUNCTION ORDER
## WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF

          Plaintiff Federal Trade Commission ("Commission" or "FTC"), pursuant to

Sections 5(a) and 13(b) of the Federal Trade Commission Act ("FTC Act"),

15 U.S.C. §§ 45(a) and 53(b), filed a Complaint for Injunctive and Other Equitable

Relief (Dkt. #1) and moved for a preliminary injunction pursuant to Rule 65(b) of the

Federal Rules of Civil Procedure (Dkt. #4).  Without waiving any available defenses

to the Complaint, defendants Mortgage Foreclosure Solutions, Inc., Debra Behrens,

and Michael Siani, through their counsel, stipulate and consent to the terms,

conditions, and findings of this Stipulated Preliminary Injunction Order with Asset

Freeze and Other Relief as set forth below and hereby consent to the entry thereof

without the need of a hearing.

Whereas, the Court has considered the complaint, declarations, exhibits, and memorandum filed in support of plaintiff's application, and it is hereby ORDERED, ADJUDGED AND DECREED as follows:

## FINDINGS OF FACT

1.     This Court has jurisdiction over the subject matter of the case and jurisdiction over all parties;

2.     The Complaint states a claim upon which relief may be granted under Sections 5(a) and 13(b) of the FTC Act, 15 U.S.C. § 45(a) and 53(b);

3.      Venue properly lies with this Court;

4.     There is good cause to believe that defendants, Mortgage Foreclosure Solutions, Inc., Debra Behrens, and Michael Siani, have engaged in and are likely to continue to engage in deceptive acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and that the Commission is likely to prevail on the merits of this action;

5.     There is good cause to believe that immediate and irreparable harm will result from defendants' ongoing violations of Section 5(a) of the FTC Act unless Defendants are preliminarily restrained and enjoined by Order of this Court.  The evidence set forth in the Commission's Ex Parte Motion for Temporary Restraining

-2-

Order with Asset Freeze and Other Equitable Relief and Order to Show Cause Why

a Preliminary Injunction Should Not Issue (Dkt. #5), and in the accompanying

declarations and exhibits, shows that the Commission is likely to prove that

defendants have engaged in a concerted course of illegal activity in connection with

the sale of mortgage foreclosure rescue services nationwide, in violation of the FTC

Act. Thus, there is good cause to believe that defendants will attempt to conceal the

scope of their illegal actions to avoid returning their ill-gotten gains to consumers

injured by their unlawful practices if not restrained from doing so by this Court;

6.     There is good cause to believe that immediate and irreparable damage

to the Court' s ability to grant effective final relief for consumers in the form of

monetary restitution will occur from the sale, transfer, assignment, or other

disposition or concealment by defendants of their assets or business records unless

defendants are preliminarily retrained and enjoined by Order of this Court;

7.     There is good cause for ordering defendant Mortgage Foreclosure

Solutions, Inc., to provide an accounting of their business as set forth herein;

8.     There is good cause for issuing this Order pursuant to Fed. R. Civ. P.

65(b);

9.      Weighing the equities and considering the Commission's likelihood of success in this cause of action, this preliminary injunction is in the public interest;

10.     No security is required of any agency of the United States for issuance of a temporary restraining order.  See Fed. R. Civ. P. 65(c);

11.     The parties hereto agree and acknowledge that, with the exception of the admissions concerning the Court's jurisdiction, nothing in this Stipulated Preliminary Injunction Order shall be deemed an admission or waiver by any of the defendants hereto.

## DEFINITIONS

For purposes of this Agreed Preliminary Injunction Order with Asset Freeze and Other Equitable Relief, the following definitions shall apply:

1.      "Asset" or "assets" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes," (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

-4-

2.      "Defendants" means individual defendants, Debra Behrens and

Michael Siani, and corporate defendant, Mortgage Foreclosure Solutions, Inc.

3.      "Document" is synonymous in meaning and equal in scope to the

term, as defined in Federal Rule of Civil Procedure 34(a), and includes both

documents and electronically stored information, including, but not limited to,

writings, drawings, graphs, charts, photographs, sound recordings, images, and

other data or data compilations, stored in any medium from which information can be

obtained either directly or, if necessary, after translation by the responding party into

a reasonably usable form.  A draft or non-identical copy is a separate document

within the meaning of this term.

4.      "Material" means likely to affect a person's choice of, or conduct

regarding, goods or services.

5.      "Person" means a natural person, an organization or other legal entity,

including a corporation, partnership, sole proprietorship, limited liability company,

association, cooperative, or any other group or combination acting as an entity.

6.      "Plaintiff" means the Federal Trade Commission ("Commission" or

"FTC").

7.     "Temporary Receiver" means the Temporary Receiver appointed in

Section VII of the Ex Parte Temporary Restraining Order with Asset Freeze and

Other Equitable Relief (Dkt. # 10, "Ex Parte TRO"):  Burton W. Wiand of Fowler,

White, Boggs Banker, 501 East Kennedy Boulevard, Suite 1700, Tampa, Florida

33602.

## I. PROHIBITED BUSINESS ACTIVITIES

IT IS HEREBY ORDERED that, in connection with the advertising, marketing,

promotion, offering for sale, or sale of any goods or services, including, but not

limited to, mortgage foreclosure rescue services, defendants and their agents,

employees, officers, servants, and all other persons or entities in active concert or

participation with them who receive actual notice of this Order by personal service or

otherwise, are hereby preliminarily restrained and enjoined from making any express

or implied representation or omission of material fact that is false or misleading, in

any manner, orally or in writing, to any consumer, including, but not limited to, any

false or misleading representation that defendants will stop foreclosure in all or

virtually all instances.  Provided that defendants comply with the full terms of this

Order, defendants shall be permitted to reestablish operation of the corporate

defendant upon entry of this Order.

## II. ASSET FREEZE

IT IS FURTHER ORDERED that the defendants and their agents, employees, officers, servants, and all other persons or entities in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby preliminarily restrained and enjoined from:

A.      Assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning, pledging, selling, spending, transferring, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, artwork, automobiles, coins, consumer lists, contracts, precious metals, shares of stock, uncashed checks, or other assets, wherever located, that are: (1) owned or controlled by any defendant, in whole or in part; (2) in the actual or constructive possession of any defendant; (3) held by an agent of any defendant as a retainer for the agent's provision of services to any defendant; or (4) owned, controlled by, or in the actual or constructive possession of, or otherwise held for the benefit of, any corporation, partnership or other entity directly or indirectly owned, managed, or controlled by, or under common control with, any defendant, including, but not limited to, any asset held by or for any defendant in any account at any bank or savings and loan

-7-

institution, credit card processing agent, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, merchant account processor, check processor, money broker, or other financial institution or organization of any kind;

      B.     Opening or causing to be opened any safe deposit boxes or commercial mail boxes titled in the name of any defendant, or subject to access by any defendant;

      C.     Incurring charges or cash advances on any credit card, debit card, or lines of credit issued in the name, individually or jointly, of any defendant;

      D.     Obtaining a personal or secured loan; and

      E.     Incurring liens or other encumbrances on real property, personal property, or other asset held in the name, individually or jointly, of any defendant.

      Provided , however, that, subject to the monthly accounting requirements set forth in Section III of this Order, (1) the corporate defendants may use after acquired assets to pay reasonable, ordinary, and necessary business expenses; (2) individual defendants Debra Behrens and Michael Siani may use after acquired assets derived from the corporate defendant, not to exceed $3,500 per month each, to pay personal

living expenses; (3) defendants may use after acquired assets to pay reasonable,
ordinary, and necessary attorney fees not to exceed $10,000; (4) defendants may, if
necessary, request the release of frozen assets to pay reasonable, ordinary, and
necessary attorney fees or business expenses and may receive such additional
funds after obtaining prior written approval by the Commission or, in the alternative,
upon approval by the Court; and (5) any after acquired assets of the individual
defendants unrelated to earnings or income derived from the corporate defendant
shall not be subject to the asset freeze provisions of Section II of this Order.

### III. MONTHLY ACCOUNTING

IT IS FURTHER ORDERED that the corporate defendant shall cause to be
filed with the Commission, under penalty of perjury, monthly financial statements
detailing all income, including but not limited to money, credits, products, or property
received and all expenditures paid on or after the date of entry of this Order.  The
corporate defendant shall file these statements on or before the 10th day following
the end of each calendar month, commencing with the period March 1, 2008 through
March 31, 2008, and continuing each month thereafter so long as this Order remains
in effect.  Within ten (10) days of receipt of the monthly financial statement, the
Commission shall file with the Court any objections or motions related to such

financial statement.

## IV.  TURNOVER OF ASSETS AND FUNDS IN THE
## ORDINARY COURSE OF BUSINESS

IT IS FURTHER ORDERED that the asset freeze imposed in Section II of this

Order shall not be construed to prevent any third party who holds money, credits,

products, or property or information for or on behalf of the corporate defendant

pursuant to any contract or course of dealing governing the ordinary course of the

corporate defendant's business activities from releasing such money, credits,

products, property, or information to the corporate defendant, or to prevent the

corporate defendant or its agents from using such money, credits, products,

property, or information in compliance with the provisions of this Order.

## V.  DUTIES OF THIRD PARTY ASSET HOLDERS

IT IS FURTHER ORDERED that, effective immediately upon notification of

this Order, any financial or brokerage institution, escrow agent, money market or

mutual fund, title company, commodity trading company, common carrier, storage

company, trustee, commercial mail receiving agency, merchant account processor,

mail holding or forwarding company, creditor or credit card issuer, or any other

person or entity having possession, custody or control of any assets or documents of

-10-

any defendant, or of any account, safe deposit box, or other asset of any defendant, either individually or jointly, or held on behalf of or for the benefit of any defendant, at any time since January 1, 2006, shall:

A.      Hold and retain within its control and prohibit the assignment, dissipation, encumbrance, pledge, removal, sale, transfer, withdrawal, or other disposal of any of the assets or other property held by, under its control, or on behalf of any defendant in any account maintained in the name of, or for the benefit or use of, any defendant, in whole or in part, except as directed by further order of this Court, or by written agreement of plaintiff and the parties claiming an interest in such account or asset;

B.      Deny defendants access to any safe deposit boxes, commercial mail boxes, or storage facilities that are titled in the name, individually or jointly, of any defendant, or otherwise subject to access by any defendant;

C.      Provide to counsel for the Commission, within five (5) business days of notice of this Order, a sworn statement setting forth:

1.      The identification number of each account or asset titled in the name, individually or jointly, of any defendant, or to which any defendant is a signatory, or which is held on behalf of, or for the

benefit or use  of, any defendant or subject to any defendant's

control, including all trust accounts on behalf of any defendant

or subject to any defendant's control;

2.      The balance of each such account, or a description and

appraisal of the value of such asset, as of the close of business

on the day on which notice of this Order is received, and, if the

account or asset has been closed or removed, or more than

$1,000 withdrawn or transferred from it within the last ninety

(90) days, the date of the closure or removal of funds, the total

funds removed or transferred, and the name and account

number of the person or entity to whom such account, funds, or

other asset was remitted; and

3.      The identification and location of any safe deposit box,

commercial mail box, or storage facility that is either titled in the

name, individually or jointly, of any defendant, or is otherwise

subject to access by any defendant;

D.      Upon request by the Commission, provide copies of all records or

other documents pertaining to each such account or asset, including, but not limited

to, originals or copies of account applications, corporate resolutions, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs, within five (5) days of said request. For the purposes of this Section, the Commission may properly serve this Order on any financial or brokerage institution, business entity or person that holds, controls or maintains custody of any account or asset of any defendant or has held, controlled or maintained custody of any account or asset of any defendant at any time since January 1, 2006, by facsimile transmission, hand delivery, or overnight carrier. The assets affected by this Section shall include both existing assets and assets acquired after the effective date of this Order.

## VI.   REPATRIATION OF FOREIGN ASSETS AND DOCUMENTS

IT IS FURTHER ORDERED that, within five (5) business days following service of this Order, defendants shall:

A.      Repatriate to the United States all funds, documents or assets in foreign countries held either: (1) by any defendant; (2) for the benefit of any defendant; or (3) under the direct or indirect control, jointly or individually, of any defendant and deliver them to the Receiver;

-13-

B.     The same business day as any repatriation, (1) notify counsel for the Commission and the Receiver of the name and location of the financial institution or other entity that is the recipient of such funds, documents or assets; and (2) serve this Order on any such financial institution or other entity; and

C.     Provide the Commission and the Receiver with a full accounting of all funds, documents, and assets outside of the territory of the United States held either: (1) by the defendant; (2) for the defendant's benefit; or (3) under the defendant's direct or indirect control, individually or jointly.

## VII.   INTERFERENCE WITH REPATRIATION

IT IS FURTHER ORDERED that defendants are hereby preliminarily restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section of this Order, including, but not limited to:

A.     Sending any statement, letter, fax, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time as all assets have been

-14-

fully repatriated pursuant to the preceding Section of this Order; and

   B.      Notifying any trustee, protector or other agent of any foreign trust or

other related entities of either the existence of this Order, or of the fact that

repatriation is required pursuant to a Court Order, until such time as all assets have

been fully repatriated pursuant to the preceding Section of this Order.

   VIII.  MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

   IT IS FURTHER ORDERED that defendants are hereby preliminarily

restrained and enjoined from:

   A.      Destroying, erasing, mutilating, concealing, altering, transferring, or

otherwise disposing of, in any manner, directly or indirectly, any books, records,

tapes, discs, accounting data, checks (fronts and backs), correspondence, forms,

advertisements, website designs and texts, telemarketing scripts or outlines,

brochures, manuals, banking records, customer lists, customer files, customer

payment histories, invoices, telephone records, ledgers, payroll records, or other

documents of any kind, including electronically stored information, in their

possession, custody, or control that relate to the business practices or business or

personal finances of any defendant from January 1, 2006, to the present;

B.      Failing to create and maintain books, records, accounts, bank

statements, accountants' reports, cash disbursement ledgers, cash receipt ledgers,

general journals, general ledgers, documents indicating title to real or personal

property, and any other data which, in reasonable detail, accurately, completely, and

fairly reflect the defendants' incomes, disbursements, transactions, and use of funds;

C.      Creating, operating, or exercising any control over any new business

entity, whether newly formed or previously inactive, including any partnership, limited

partnership, joint venture, sole proprietorship, or corporation, without first providing

plaintiff with a written statement disclosing: (1) the name of the business entity; (2)

the address and telephone number of the business entity; (3) the names of the

business entity's officers, directors, principals, managers, and employees; and (4) a

detailed description of the business entity's intended activities.

## IX.      CUSTOMER LISTS

IT IS FURTHER ORDERED that defendants, and their successors and

assigns, officers, agents, servants, employees, and attorneys, and all those persons

or entities in active concert or participation with them who receive actual notice of

this Order by personal service or otherwise,  are hereby preliminarily restrained and

enjoined from:

  A. Selling, renting, leasing, transferring, or otherwise disclosing the name, address, telephone number, social security number, billing information (any data that enables any person to access another person's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account or debit card), e-mail address, or other identifying information of any person whose identifying information was acquired any defendant, at any time prior to entry of this Order, in connection with the purchase of any mortgage foreclosure service;

  B. Using or benefitting from, for commercial purposes, the name, address, telephone number, social security number, billing information (any data that enables any person to access another person's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account or debit card), e-mail address, or other identifying information of any person whose identifying information was acquired by any defendant, at any time prior to entry of this Order, in connection with the purchase of any mortgage foreclosure service;

  C. Provided, however, that defendants may disclose such identifying information (1) with the express written consent of the person whose information is disclosed, (2) to a law enforcement agency, or (3) as required or authorized by any law, regulation, or court order.

-17-

## X.  DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that defendants shall immediately provide a copy of this Order to each affiliate, agent, partner, division, sales entity, successor, assignee, officer, director, employee, independent contractor, spouse, Internet web host or master, agent, attorney, and/or representative of defendants and shall, within ten (10) days from the date of entry of this Order, serve upon counsel for the Commission a sworn statement that the defendants have complied with this provision of this Order, which statement shall include the names and addresses of each such person or entity who has received a copy of the Order.

## XI.  WINDING UP OF TEMPORARY RECEIVER

IT IS FURTHER ORDERED that the Temporary Receiver appointed in Section VII of the Ex Parte TRO will submit for the Court's approval an accounting of the disposition of the receivership estate, along with the Temporary Receiver's application for fees and expenses, which shall include a detailed billing statement of all hourly charges and expenses.  Upon the Court's approval of the Temporary Receiver's accounting, the receivership in this case shall terminate.

## XII.  COMPENSATION OF RECEIVER

IT IS FURTHER ORDERED that the Temporary Receiver is entitled to

reasonable compensation for the performance of all duties pursuant to this Order

and the Ex Parte TRO solely from the assets now held by, or in the possession or

control of the Temporary Receiver.  As set forth in Section XI of this Order, the

Receiver shall file with the Court and serve on the parties a request for the payment

of such compensation, which shall be due prior to March 31, 2008.

## XIII.  FUNDS IN CONTROL OF THE RECEIVER

IT IS FURTHER ORDERED that the Temporary Receiver shall deposit any

and all remaining funds at the time of the termination of the receivership into the

corporate defendant's checking account.

## XIV.  BOND

IT IS FURTHER ORDERED that, upon the Court's approval of the Temporary

Receiver's accounting, the receivership in this case shall terminate and the Clerk of

the Court shall properly release the bond filed with this Court.

### XVI.  SERVICE OF ORDER UPON THIRD PARTY ASSET HOLDERS

IT IS FURTHER ORDERED that copies of this Order may be served by any means, including facsimile transmission, upon any financial institution or other entity or person that may have possession, custody, or control of any documents or assets of any defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

### XV.  CREDIT REPORTS

IT IS FURTHER ORDERED that the Commission may obtain credit reports concerning defendants Debra Behrens and Michael Siani pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such report is requested shall provide it to the Commission.

### XVI.  CORRESPONDENCE WITH AND NOTICE TO PLAINTIFF

IT IS FURTHER ORDERED that, for purposes of this Order, all correspondence and pleadings to the Commission shall be addressed to:

-20-

Dama J. Brown, Esq.
Federal Trade Commission
225 Peachtree Street, Suite 1500
Atlanta, Georgia 30303
(404) 656-1361 (telephone)
(404) 656-1379 (facsimile)

### XVII.  MONITORING

IT IS FURTHER ORDERED that agents or representatives of the

Commission may contact defendants' agents or representatives directly and

anonymously for purposes of monitoring compliance with Section I of this Order.

### XVIII.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction over this

matter for all purposes.

IT IS SO ORDERED, this _7th_ day of __March__, 2008, at

_____.m.

_____
Hon. Stephen Merryday
United States District Judge

-21-